The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Fuleihan. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties of their representatives, or amend the Opinion and Award.
This matter, which has been the subject of multiple Industrial Commission Awards based on the admittedly compensable injury sustained on April 19, 1985 and now involves a death benefits claim, was scheduled for hearing before Deputy Commissioner Shuping on 18 May 1994 in Lillington; however, in lieu of a formal hearing or the opportunity to offer lay evidence the parties agreed to submit the necessary medical testimony for decision by deposition or stipulated report within 60 days thereafter and have since not only deposed Drs. Griggs and Patterson, but submitted Statements of Contention; therefore, the same stands ready for appropriate final disposition and for the purpose thereof each of the Industrial Commission's prior awards are hereby incorporated by reference as if fully set out herein.
Historically speaking, the Industrial Commission entered its initial award on July 17, 1985 when it approved a Form 21 Agreement for Compensation for Disability submitted by the parties. Thereafter Deputy Commissioner Taylor entered a September 20, 1988 Opinion and Award refusing to set aside the Commission's earlier award and in particularly the provisions thereof relating to plaintiff's average weekly wage, which was affirmed by the Full Commission on May 3, 1989 and plaintiff's subsequent appeal to the Court of Appeals was abandoned
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of his fatal heart attack on January 14, 1992 deceased employee was a 46 year-old married male, whose surviving wife also suffers from significant coronary artery disease.
2. On April 19, 1985 deceased employee sustained the admittedly compensable injury by accident giving rise to the Industrial Commission's initial award herein when he was involved in a truck accident resulting in a depressed skull fracture and left leg injuries among others
3. Between the date of his injury and death deceased employee never returned to work for defendant-employer or anyone else and continued to receive weekly compensation benefits under the Industrial Commission's original award for his resulting total disability. Neither the same award nor the subsequent awards of Deputy Commissioner Taylor refusing to set aside the original award and the Full Commission affirming it resulted in a final determination of the deceased employee's disability pursuant to the provisions of G.S. § 97-98 because they neither addressed the nature and extent of the permanent head and left leg injury sustained nor the compensation benefits due them, which could not have been known at the time of the same awards entry; but rather, the Industrial Commission's award merely established that the deceased employee had sustained a compensable April 19, 1985 injury resulting in the head and left leg injuries that were then totally disabling entitling him to weekly compensation benefits.
4. During the period from April of 1985 until he last actively saw him on January 26, 1989 Dr. Robert W. Patterson, a Sanford a family practitioner, was one of the physicians who evaluated and treated the deceased employee for his injuries.
5. After deceased employee sustained his first heart attack on or about April 3, 1987 Dr. Patterson referred him for evaluation to North Carolina Memorial Hospital in Chapel Hill where he was seen by Dr. Thomas R. Griggs, a cardiologist there, among other physicians, and underwent exercise treadmill testing as well as cardiac catheterization.
6. The deceased employee's initial heart attack occurred when a blood clot or thrombosis formed in an area of narrowing or stenosis in the right coronary artery due to accumulated deposits of plaque from his underlying atherosclerotic disease occluding the same artery blocking normal blood flow to the portion of the heart muscle on the underside of the heart supplied by the same artery resulting in death of the heart muscle served and it being replaced by scar tissue.
7. Although the initial heart attack was a moderately severe one resulting in permanent damage to the area of the heart muscle served by the occluded right coronary artery; the heart otherwise thereafter moved normally and had normal contraction and pumping function. The initial heart attack did not require surgical management nor was it significantly symptomatic as indicated by the fact that the deceased employee on exercise treadmill testing was able to walk for 10 minutes before developing symptoms and thus had a fairly average degree of exercise capability.
8. The initial heart attack that deceased employee suffered was due to his underlying coronary artery disease or atherosclerosis, which is the most common disease process in the adult population and a chronic progressive one with certain known risk factors capable of accelerating the development of atherosclerotic plaque and the resulting risk of another heart attack under similar circumstance.
Among the known risk factors are gender (males develop the disease a decade earlier than females) family history, diabetes (mellitus) hypertension, obesity, high cholesterol levels and cigarette smoking. At the time of his initial heart attack deceased employee was not only a markedly obese male with a history of high cholesterol levels, but had a 60 pack a year cigarette smoking history and thereafter continued to have elevated cholesterol levels as well as to smoke despite being advised to stop by his physicians.
9. The fatal heart attack that deceased employee suffered on January 14, 1992 was due to the same risk factors responsible for his initial heart attack. Neither were the proximate result of the injury sustained on April 19, 1985, including as part thereof any stress that plaintiff suffered from these injuries or their resulting physical limitations. The permanent head injury that deceased employee sustained on the date in question did not result in him being at an increased risk of a heart attack as compared to members of the general public.
10. Dr. Patterson's testimony that the stress associated with deceased employee's injury and/or the manner that his workers' compensation claim was handled proximately resulted in his fatal heart attack as well as the earlier non-fatal one because it was one of the contributing factors to or causes of the same is not accepted as credible and is not only contrary to the credible opinion of Dr. Griggs otherwise that stress was not one of the proximate contributing causes of the fatal heart attack; but in significant part based on inconsistent assumptions — particularly about the manner in which the claim has been handled. In the first place, Dr. Patterson assumed that deceased employee was feeling financial stress because he was not receiving workers' compensation benefits when in fact he continued to receive weekly benefits from the time of his injury until his death some seven years later. In the second place, Dr. Patterson raised the "stress" of the insurance carrier requiring plaintiff to submit himself for multiple evaluations when in fact not only in the September 16, 1985 and January 13, 1986 correspondence attached as exhibits to his deposition testimony does Dr. Patterson himself indicate that the deceased employee needed to be re-evaluated on a continuing basis and (Dr. Patterson) had also referred him to both North Carolina Memorial Hospital and Duke University Medical Center for evaluation after his initial heart attack; but the neuro-psychologist, Dr. Evans, who evaluated deceased employee's head injury at Dr. Patterson's request at North Carolina Memorial Hospital in August of 1986, felt it would be reasonable to have him reassessed because recovery from head injuries was oftentimes gradual with subtle gains being made for years to come. In the third place, the majority of the assumptions that Dr. Patterson based his opinion about the affect of stress on plaintiff's fatal heart attack are not supported by credible evidence of record and more specifically either that defendant-employer did not believe that plaintiff had injured himself or was somehow attempting to "twart" him in receiving workers' compensation benefits he was otherwise due or otherwise hassling him in pursuit of his workers' compensation claim.
**************
The foregoing stipulations and findings of fact engender the following CONCLUSIONS OF LAW the involved death benefits claim was not untimely because there had never been a final determination of disability. G.S. § 97-38.
2. Deceased employee's death on January 14, 1992 did not proximately result from the otherwise compensable injury sustained on April 19, 1985; but rather, was due to the chronic progression of his underlying coronary artery disease, which he developed from risk factors wholly independent of the injury sustained on the date in question. Any resulting stress that the deceased employee suffered as a result of the same injury did not proximately contribute to his fatal heart attack. Plaintiff's evidence, which if believed, would tend to establish that stress was a proximate contributing cause to the death of deceased employee is not accepted as credible and is contrary to the credible medical evidence otherwise.
**************
The foregoing stipulations, findings of fact and conclusions of law engender the following
AWARD
1. The involved death claim must be and is hereby DENIED.
2. Each side shall bear its own costs and as part of their costs defendants shall pay expert witness fees in the amount of $262.50 to Dr. Thomas R. Griggs and $250.00 to Dr. Robert W. Patterson, each of whom appeared by deposition and gave expert medical testimony.
 S/ _________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________________ COY M. VANCE COMMISSIONER